# In the United States Court of Federal Claims

No. 09-460L

(Filed:  November 19, 2012)
_____

| | |
|---|---|
| DOUGLAS R. BIGELOW TRUST, JAMIE MORTENSON, *et al.*, On behalf of themselves and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Cross-motions for summary judgment; National Trails System Act; Takings – *Preseault*; Construction of deed; Michigan law applied; Deed unmistakably expressed grantor's intent to convey fee simple to railroad; No takings of parcel. |

_____

**OPINION**
_____

*Mark Fernlund Hearne, II*, Arent Fox, LLP, Clayton, MO, for plaintiffs.

*Joseph Nathanael Watson*, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Ignacia S. Moreno*, for defendant.

**ALLEGRA, Judge:**

Plaintiffs are landowners in Michigan, who allege that their property was taken as a result of the National Trails System Act (the Trails Act), 16 U.S.C. §§ 1241-51.  The court certified a class on March 23, 2011.  Pending are cross-motions for partial summary judgment regarding defendant's liability as to one of the parcels at issue.  For the reasons that follow, the court holds, as a matter of law, that there was no takings of that parcel, as the prior owner had conveyed fee title to the property to a railroad.

I.      **BACKGROUND**

        This case involves a railroad corridor that runs between milepost 40 in Alma, Michigan, and milepost 45.5 in Elwell, Michigan, a distance of approximately 5.5 miles (the Railroad Line).  Ten Michigan landowners brought suit against the United States alleging that they are entitled to just compensation under the Fifth Amendment for property they claim was taken when the Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU) pursuant to the Trails Act.  The NITU allowed the operating railroad company to enter into a railbanking agreement.[1]

        The parties stipulated to liability *vel non* on all but one of these claims.  The pending cross motions for summary judgment relate only to liability questions in the remaining claim – that of plaintiff Mary Lou Brady.

        In the early 1880s, C.R. and Josephine Moulton (husband and wife) executed a deed conveying a property interest to the Chicago, Saginaw & Canada Railroad Company for $100.[2]  The Moultons used a pre-printed form and filled in certain blanks by hand.  The relevant portion of the deed states:

        "WITNESSETH, That the said parties of the first part, for and in consideration
        of the sum of one hundred Dollars ($100.00) to their in hand paid the said party
        of the second part, the receipt whereof is hereby confessed and acknowledged,
        have granted, bargained, sold, remised, released, aliened and confirmed, and by
        these presents do grant, bargain, sell, remise, release, alien and confirm unto the
        said party of the second part, its successors and assigns, Forever all that certain
        piece or parcel of land and being in the Township of Pine River, County of
        Gratiot and State of Michigan ___ and described as follows to wit:

                A strip of land for a right of way one hundred feet in width across the
                South West quarter (1/4) of the South East quarter (1/4) of Section thirty

---

        [1]  Congress passed the Trails Act to preserve unused railway rights-of-way for future use, or "railbank" them, by using them as recreational trails.  *See Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-8, (1990) (*Preseault I*); *see also Barclay v. United States*, 443 F.3d 1368, 1371 ("[T]he purpose of the Trails Act was to preserve unused railroad rights-of-way by converting them into recreational trails.").  If a state, municipality, or private group is willing to assume financial and managerial responsibility for the right-of-way, the railroad must transfer the right-of-way to it for trail use, rather than abandon it.  16 U.S.C. § 1247(d).

        [2]  Both parties refer to this deed as the Moulton deed.  However, the stipulated transcription of the deed identifies the signatories as C.R. and Josephine Hamilton.  Similarly, there is some confusion as to the exact date that this deed was executed.

one (31) in Town Twelve (12) North of range three (3) West of the State
of Michigan.

The said strip of land or right of way to extend fifty (50) feet on either side
of the center line of the Chicago Saginaw and Canada Railroad as now
located over and across the said described _____  and according to the plat
and survey hereof filed in the office of its Register of Deeds of said
County of Gratiot.

Together, With all and singular the hereditaments and appurtenances thereunto
belonging, or in anywise appertaining; and the reversion and reversions,
remainder and remainders, rents, issues and profits thereof; and all the estate,
right, title, interest ___ demand whatsoever of the said parties of the first part,
either in Law or Equity, of, in and to the above bargained premises: with the ___
hereditaments and appurtenances; To have and to Hold, the said premises as
above described, with the appurtenances, unto the said party of the second part,
and to its successors and assigns Forever."

On May 30, 1984, land abutting the right of way (and, according to plaintiff, underlying
the right of way) was purchased by Benton E. Feichtenbiner and plaintiff Mary Lou
Feichtenbiner.  Mary Lou Feichtenbiner outlived her husband, and is now known as Mary Lou
Brady.  On March 15, 2000, she quit-claimed the land to the Mary Lou Feichtenbiner Trust.

Chicago, Saginaw & Canada Railroad's successors-in-interest are CSX Transportation,
Inc. and the Mid-Michigan Railroad (collectively, the Railroad).  In 2001, the Railroad stopped
operating trains on this section of track.  In the summer of 2003, the Railroad jointly filed a
Notice of Exemption seeking authority from the STB to abandon the 5.5 mile Railroad Line,
including the section running through plaintiff's land.  The STB authorized the railroad to
remove the tracks and to negotiate an agreement with Friends of Fred Meijer Heartland Trail
(Heartland Trail) for interim use of the right of way.  In 2006, the Railroad notified the STB that
it had, in fact, sold the railway to Heartland trail for interim trail use (railbanking).  In so doing,
the Railroad quit-claimed whatever interest it held in the right of way to the Heartland Trail.

On July 20, 2009, plaintiff was one of nine landowners affected by this STB decision to
file suit (individually and as class representatives) against the United States alleging a takings of
their property without just compensation under the Fifth Amendment of the United States
Constitution.  On September 15, 2009, plaintiffs amended their complaint to, *inter alia*, add a
newly named plaintiff.  On October 7, 2011, plaintiffs filed a motion for partial summary
judgment.  On November 18, 2011, the parties stipulated to resolution of liability questions for
all but Mary Lou Brady's claim.  On November 22, 2011, defendant filed a cross-motion for
summary judgment relating only to the aforementioned claim.

## II.    DISCUSSION

We begin with common ground.  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248.  However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *see also Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004).  The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 250-52; *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)).  Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587-88 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).  Where, as here, a court rules on cross-motions for summary judgment, it must view each motion, separately, through this prism.  *See Carolina Plating Works, Inc. v. United States*, 102 Fed. Cl. 555, 559 (2011).[3]

In *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc), the Federal Circuit held that a threshold issue in rails-to-trails cases is who owned the land involved, particularly on whether the railroad in question acquired an easement or instead obtained fee simple title to the corridor.  "Clearly, if the Railroad obtained a fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors," the court observed, a plaintiff "would have no right or interest in those parcels and could have no claim related to those parcels for a taking."  *Id.*; *see also Sutton v. United States*, 2012 WL 5194058, at *2 (Fed. Cl. Oct. 18, 2012).  In determining whether this rule applies here, both parties focus on the legal import of the same, single-page deed, which effectuated the conveyance of a property interest from plaintiff's predecessor to the Railroad.  Deeds are interpreted according to the ordinary

_____

[3]  *See also Chevron U.S.A. Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1252-53 (Fed. Cir. 2002); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010).

rules of contract construction.  *See Sutton*, 2012 WL 5194058, at * 3; *see also Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 506-07 (6th Cir. 2007) (applying Michigan law); *Taylor v. Taylor*, 17 N.W. 2d 745, 746 (Mich. 1945).  Both parties agree that there are no questions of fact here and that the issue of how this deed should be construed presents a question of law, suitable for resolution under the cross-motions.  *See Steele's Lessee v. Spencer*, 26 U.S. 552, 560 (1828); *Sutton*, 2012 WL 5194058, at *3.[4]  That question, of course, must be resolved by reference to state law, in this case, that of Michigan.

The deed in question talks in terms of conveying a "right of way."   According to the Michigan Supreme Court, the phrase "right of way has two meanings in railroad parlance:" (i) the strip of land upon which the railroad is laid, in which case the interest conveyed is viewed as one of fee simple; or (ii) the mere legal right to use such a strip, in which case the interest conveyed is viewed as an easement. *Quinn v. Pere Marquette R. Co.*, 239 N.W. 376, 379 (Mich. 1931); *see also MCI Telecomms. Corp. v. Mich. Bell. Tel. Co.*, 79 F. Supp. 2d 768, 782 (E.D. Mich. 1999); *Leelanu Trails Ass'n v. Flohe*, 2000 WL 33534630, at *2 (Mich. App. Feb 8, 2000).  "[A] deed granting a right-of-way typically conveys an easement, where a deed granting land itself is more appropriately characterized as conveying a fee or some other estate."  *Mich. Dep't of Natural Resources v. Carmody-Lahti Real Estate, Inc.*, 699 N.W.2d 272, 280 (Mich. 2005).  Under this approach, Michigan courts "have consistently held that deeds conveying a right-of-way transferred an easement," and "have reached a contrary conclusion only in cases in which the deed unmistakably expressed the grantor's intent to convey a fee simple."  *Id*. at 283-84.

A review of the deed in question reveals that it unmistakably expresses the grantor's intent to convey a fee simple.  First, the deed employs exceedingly broad language in conveying

[4]  In *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 997 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), the Federal Circuit explained the law on this point thusly:

> The interpretation of a contract or a deed, like a patent, is ultimately a question of law.  There is nothing novel about the principle that, in the words of Justice Story, "the interpretation of written documents properly belongs to the Court, and not to the jury."  *William & James Brown & Co. v. McGran*, 39 U.S. (14 Pet.) 479, 493, 10 L.Ed. 550 (1840).  This principle has been routinely evoked in the context of contract law.  *See Levy v. Gadsby*, 7 U.S. (3 Cranch) 180, 186, 2 L.Ed. 404 (1805) ('the construction of a written evidence is exclusively with the court'); *Goddard v. Foster*, 84 U.S. (17 Wall.) 123, 142, 21 L.Ed. 589 (1872) ("[I]t is well-settled law that written instruments are always to be construed by the court. . . ."); *see also Meredith v. Picket*, 22 U.S. (9 Wheat.) 573, 575, 6 L.Ed. 163 (1824) (interpreting a deed, "[t]he Judges must construe the words of an entry, or any other title paper, according to their own opinion of the words as they are found in the instrument itself").

*See also Chevy Chase Land Co. of Montgomery Cnty., Md. v. United States*, 158 F.3d 574, 575 (Fed. Cir. 1998).

a property interest to the railroad, describing the subject of the conveyance alternatively as "all that certain piece or parcel of land" and later as "[a]ll the estate, right, title, interest [and] demand whatsoever of the said parties of the first part, either in Law or Equity." This language connotes that the interest being transferred is that of a fee simple. *See St. Mary's Med. Ctr. of Saginaw, Inc. v. Carpenter*, 2001 WL 1545918, at *2 (Mich. App. Nov. 30, 2001).[5] Second, while the deed refers to a "right of way," that is not what is conveyed; rather, what is conveyed is "a strip of land for a right of way." So employed, the latter phrase does not appear to describe the interest conveyed, but rather connotes the purpose for the conveyance of "a strip of land." *See Quinn*, 239 N.W. at 379. Numerous cases hold that such references do not limit the interest transferred, but merely reflect an expression of the parties' intent that "the deed is for lawful purposes." *Quinn*, 239 N.W, at 379 (citing numerous cases); *O'Dess v. Grand Trunk W. R.R. Co.*, 555 N.W. 2d 261, 263 (Mich. App. 1996). This is especially true when the deed does not contain a reverter clause, which is the case here. *Quinn*, 239 N.W. at 379-80 (citing numerous cases); *Briggs v. Grand Rapids*, 245 N.W. 555 (Mich. 1932); *O'Dess*, 555 N.W.2d at 263 ("where there is no reverter clause, a statement of use is merely a declaration of the purpose of the conveyance, without effect to limit the grant"). Indeed, the deed here conveys not only a strip of land, but also "the reversion and reversions, remainder and remainders" – with the conveyance of the latter conditional interests further supporting the notion that the railroad acquired a fee simple, rather than an easement. *See Thompson v. United* States, 101 Fed. Cl. 416, 427 (2011); *St. Mary Med. Ctr. of Saginaw, Inc.*, 2001 WL 145918, at *2.

    In *Quinn*, the Michigan Supreme Court found that language nearly identical to that in the deed in question unambiguously conveyed a fee simple. In that case, the alleged owner of property sought to restrain the railroad from drilling for oil and gas on certain land. The deed in question conveyed to the railroad's predecessor "a parcel of land" which was "to be used for railroad purposes only." 239 N.W. at 378. Similar to the deed in this case, it further conveyed "all the estate, right, title, claim and demand whatsoever of the parties of the first part, both legal and equitable." *Id*. The court rejected plaintiff's view that the deed conveyed merely an easement in the land, holding instead that, as a result of the deed, the plaintiff was left with "nonrestrictive estate or interest in the land owned by the company." *Id*. at 381. The court further observed that the "deed contains no reservation to grantors," leading the court to state that it did "not think the clause under consideration was a covenant of use." *Id*. at 380. Instead, the court concluded that the railroad company had "take[n] title in fee by deed without condition[]," meaning that it was free to drill for oil and gas. *Id*. at 380.

    In the court's view, the language of the deed in question is more compelling than that in *Quinn* in indicating that a fee was transferred. The deed here thus not only conveys "all the estate, right, title . . . and demand" in the property in question, but also all the "interest" therein. Moreover, unlike the deed in *Quinn*, the deed here contains no language limiting the parcel "to

---

        [5] *See also Tripp v. F&K Assam Family, LLC*, 755 N.W.2d 106, 110 (S.D. 2008); *Yuscavage v. Hamlin*, 137 A.2d 242, 244 (Pa. 1958) (quoting *Yuscavage v. Hamlin*, 47 Luz. L.R. 213 (Pa. Com. Pl. 1957)); *Sullivan v. United States*, 461 F. Supp. 1040, 1042 (W.D. Pa. 1978); *Radetsky v. Jorgenson*, 202 P. 175, 176 (Colo. 1921).

be used for railroad purposes only." In the court's view, these differences leave little doubt that the Michigan Supreme Court would conclude that the deed in question conveys a fee simple.

In arguing otherwise, plaintiffs cite several cases, all of which are inapposite. Contrary to their claim, this case is distinguishable from *Jones v. Van Bochove*, 61 N.W. 342 (Mich. 1894), where the deed in question described the parcel of land to be conveyed as a "right of way for a railroad." *Id*. at 343; *see Carmody*, 699 N.W.2d at 282 (noting this distinction). Nor is it relevant that the deed in *Quinn* did not explicitly use the phrase "right of way," as the Michigan Supreme Court discussed the law concerning "right of way[s]," 239 N.W. at 379, and expressed the view that the language of the deed there plainly indicated the conveyance of a fee interest. *Id*. at 379-80; *see also Carmody*, 699 N.W. at 283 (describing *Quinn* as holding that language like that present here "unambiguously showed the grantor's intent to convey their ***entire*** estate" (emphasis in original)); *O'Dess.*, 555 N.W.2d at 263. And, as noted, the language in the deed here is even more convincing in indicating the conveyance of such an interest. Finally, the court ascribes little weight to the fact that the language conveying a fee was preprinted on the form, while the language referring to a "right of way" was handwritten. While Michigan law holds that the handwritten portion of a contract controls, that is true only if there is an inconsistency between the handwritten portion and the preprinted terms. *See Thompson v. Thompson*, 46 N.W. 437, 441 (Mich. 1957); *Mansfield Mach. Works v. Lowell Common Council*, 29 N.W. 105, 107-08 (Mich. 1886); *see also Berk v. Gordon Johnson Co.*, 232 F. Supp. 682, 687 (E.D. Mich. 1964). Such is not the case here.

## III.    CONCLUSION

The court will not gild the lily. The court concludes that, through its predecessors-in-interest, the Railroad obtained a fee simple title to the land in question, leaving Mrs. Brady with no right or interest in the subject parcel that could give rise to a takings. To the extent that the complaint relies upon such a claim, it must be dismissed. Accordingly, plaintiff's motion for partial summary judgment is hereby **DENIED**, while defendant's cross-motion for partial summary judgment is hereby **GRANTED**.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge